<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>WILFREDO BERRIOS,<br><br>　　　　　　Defendant. | Crim. No. 07-00454 (GC)<br><br>**<u>OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon *pro se* Defendant Wilfredo Berrios' Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the First Step Act). (ECF No. 245.) The Government opposed. (ECF No. 259.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b).[1] For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

**I.　　BACKGROUND**

　　**A.　　The Offenses**

The Court presumes the parties' familiarity with the underlying facts as set forth by the United States Court of Appeals for the Third Circuit in *United States v. Herra-Genao*, 419 F. App'x 288 (3d Cir. 2011). "This case involves a series of violent and tragic events which traumatized everyone involved." *Id.* at 290. From February to March 2007, Berrios and his co-defendants "committed a series of four violent armed bank robberies in New Jersey." *Id.* Berrios and his co-

---

[1]　　Local Civil Rule 78.1 applies to criminal cases in the District of New Jersey. *See* L. Civ. R. 1.1; *United States v. Gibson*, Cr. No. 22-00320, 2024 WL 4476152, at *2 (D.N.J. Oct. 11, 2024).

defendants identified "easy-to-rob bank branches" and went to those bank branches armed with "handguns or large automatic weapons." *Id.* "In each case, once inside, one conspirator fired his weapon to frighten the employees, jumped over the counter, pointed his gun at the head of an employee, and demanded that money be put in a laundry bag. Once flushed with cash, [Berrios and his co-defendants] fled." *Id.* On April 5, 2007, FBI agents intercepted Berrios and his co-defendants as they arrived at a bank branch about to commit a fifth armed robbery. *Id.* While arresting one of Berrios' co-defendants, "a veteran FBI agent was shot and killed by an accidental discharge from the weapon of another agent." *Id.*

Berrios and his co-defendants were eventually indicted on numerous charges related to the bank robberies.[2] *Id.* 290-91. (*See also* ECF No. 41.) Ultimately, a jury found Berrios guilty of the following offenses: (1) conspiring to commit Hobbs Act robbery from February 8, 2007, through April 5, 2007, 18 U.S.C. § 1951; (2) three counts of armed robbery on February 16, 2007, and March 2 and 16, 2007, 18 U.S.C. § 2113(a), (d); and (3) three counts of possession of a firearm in furtherance of a crime of violence on February 16, 2007, March 2 and 16, 2007, 18 U.S.C. § 924(c)(1)(A)(iii), 18 U.S.C. § 2; (4) one count of attempting to commit armed robbery on April 5, 2007, 18 U.S.C. § 2113(a), (d); and (5) one count of possession of a firearm in furtherance of a crime of violence on April 5, 2007, 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2. *Herrara-Genao*, F. App'x at 291. (*See also* ECF No. 72.) The district court (Thompson, J.) sentenced Berrios "to the statutory mandatory minimum term of 1,020 months imprisonment, including 120 months on the first of the § 924(c) counts . . . and 300 months for each of the remaining § 924(c)

---

[2]     Berrios was not charged for the FBI agent's death. *See Herrara-Genao*, F. App'x at 290.

counts . . ., to run consecutively."[3] *Herrara-Genao*, F. App'x at 291. The Court imposed no term of incarceration for the armed robberies. *Id.*

**B. Motion for Compassionate Release**

On September 16, 2024, Berrios moved for compassionate release, asking the Court to reduce his sentence based on the following "extraordinary and compelling" reasons: (1) elimination of the stacking requirement in 18 U.S.C. § 924(c); and (2) Defendant's rehabilitation efforts and good conduct since being incarcerated. (*See generally* ECF No. 245.) Berrios also argues that the 18 U.S.C. § 3553(a) factors support reducing his sentence. (*See generally id.*)

In response to Berrios' Motion, the Government filed a letter seeking a stay of this case pending resolution of *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024), and *United States v. Carter*, Crim No. 24-1115, 2024 WL 5339852, at *1 (3d Cir. Dec. 2, 2024), two cases addressing the United States Sentencing Commission's amended policy statement on compassionate release and nonretroactive changes in the law, U.S.S.G. § 1B1.13(b)(6). (*See* ECF No. 254.) Following the Third Circuit's decisions in *Rutherford* and *Carter*, the Court directed the Government to file a response to Defendant's Motion. (ECF No. 256.)

On February 7, 2025, the Government filed an opposition to Defendant's Motion, asserting the following: (1) Defendant's claims regarding rehabilitation are not extraordinary or compelling to justify a compassionate release motion; (2) the *Rutherford* decision forecloses Defendant's

[3] At the time of sentencing, Berrios was subject to the now rescinded "stacking" requirement of 18 U.S.C. § 924(c), which applied when a defendant was convicted of multiple § 924(c) offenses. *See United States v. Hodge*, 948 F.3d 160, 161 n.2 (3d Cir. 2020). "[B]efore the First Step Act, if [the defendant] was convicted of a second § 924(c) count, he faced an enhanced consecutive 300-month mandatory recidivist penalty—even though both counts came from the same indictment." *Id.* Under the revised version of § 924(c), a defendant convicted of multiple § 924(c) offenses in the same case is subject only to the mandatory minimums, not the enhanced 300-month recidivist penalty. *Id.*

argument regarding the stacking requirement in 18 U.S.C. § 924(c); and (3) the 18 U.S.C. § 3553(a) factors independently support denying Defendant's Motion. (*See generally* ECF No. 259.)

## II.     LEGAL STANDARD

A district court generally has limited authority to modify a federally imposed sentence once it commences. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"). However, the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act, passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018), enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the Bureau of Prisons (BOP) was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Although BOP still has "the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf," a defendant now "has recourse [by filing a motion in federal court] if BOP either declines to support or fails to act on that defendant's motion." *Id.*; 18 U.S.C. § 3582(c)(1)(A).

Once the First Step Act's procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

## III. DISCUSSION

### A. Procedural Prerequisites

The procedural prerequisites for judicial review of compassionate release motions require the defendant to "fully exhaust administrative remedies within the [Bureau of Prisons] or wait 30 days from the date the facility's warden receives defendant's request, whichever happens first." *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). The burden is on the defendant to demonstrate that he satisfied this procedural prerequisite for judicial review. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)). A defendant's noncompliance with section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release." *Raia*, 954 F.3d at 597.

As part of his Motion, Berrios attached a letter signed by the FCI Ray Brook Warden, dated July 22, 2025. (*See* ECF No. 245 at 32.[4]) The letter indicates that Berrios' request for compassionate release was denied. (*Id.*) Because it appears that Berrios has exhausted his administrative remedies, the Court finds that he has met the procedural requirements for bringing a compassionate release motion. Further, the Government has waived the exhaustion requirement "[t]o the extent [Berrios is] making any arguments now that he did not present to the [BOP]." (ECF No. 259 at 6 (citing *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).)

### B. Extraordinary and Compelling Reasons

The First Step Act does not define "extraordinary and compelling reasons," which means that district courts have some "flexibility and discretion to consider the unique circumstances" for

---

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

each compassionate release motion. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398-99 (E.D. Pa. 2020)). When giving shape to this "otherwise amorphous phrase," courts may look to the statute's "text, dictionary definitions, and the policy statement" of the U.S. Sentencing Commission. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

In *Andrews*, the district court (affirmed on appeal) explained that "[t]he ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.' And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *United States v. Andrews*, 480 F. Supp. 3d 669, 682-83 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021) (first quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014); and then quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)).

As previously outlined, Berrios asserts that changes to 18 U.S.C. § 924(c) and his rehabilitation efforts and good conduct while incarcerated establish "extraordinary and compelling" reasons to grant his Motion. The Court will address each argument in turn.

1. *Nonretroactive Change in the Law*

The Third Circuit recently considered whether a nonretroactive change in the law could be considered an "extraordinary and compelling reason" to warrant a sentence reduction. *Rutherford*, 120 F.4th at 372. Specifically, the Third Circuit considered whether courts must be guided by the Sentencing Commission's 2023 amended policy statement (U.S.S.G. § 1B1.13(b)(6)) on compassionate release, which "said, for the first time, that courts could consider nonretroactive changes in law" such as the First Step Act's nonretroactive change to the "stacking" provision of 18 U.S.C. § 924(c). *Id.* at 363. The court held that "subsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate

6

release." *Id.* at 376. This is so because "Congress explicitly made the First Step Act's change to § 924(c) nonretroactive." *Id.* The court also reaffirmed its holding in *Andrews*, noting that the duration of a defendant's sentence and nonretroactive changes in the law are not "'always irrelevant to the sentence-reduction inquiry' because they 'may be a legitimate consideration for courts at the next step of the analysis when [a court] weigh[s] the § 3553(a) factors.'" *Id.* at 377 (quoting *Andrews*, 12 F. 4th at 262). Nevertheless, "[w]hen it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so [courts] cannot rightly consider it." *Id.* at 378.

Because the mandates of *Rutherford* are clear, the First Step Act's modification of § 924(c) is not an "extraordinary and compelling" reason to reduce Berrios' sentence. *See Manning*, 2025 WL 24717, at *1 n.2 (noting that because of the Third Circuit's decision in *Rutherford*, the parties agreed that the defendant was "ineligible for relief under [U.S.S.G. § 1B1.13](b)(6)"); *see also Andrews*, 12 F. 4th at 261 (noting that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence" (quoting *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring))).

### 2. *Rehabilitation*

The Third Circuit has made clear that "rehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release." *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023) (citing U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t)); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 499 (E.D. Pa. 2020) ("Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation . . . alone' does not suffice." (quoting 28 U.S.C. § 994(t))). Rather, "a defendant's rehabilitation may only 'contribute to extraordinary and compelling reasons.'" *McNair*, 481 F. Supp. 3d at 370 (quoting *Rodriguez*, 451 F. Supp. 3d at 7

405). "[A]bsent any other circumstances that could constitute extraordinary or compelling reasons for a reduction," efforts toward rehabilitation will not warrant granting a motion for compassionate release. *United States v. Gantt*, Crim. No. 06-00699-1, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024).

In support of his rehabilitation argument, Berrios asserts that "despite knowing that [I] will likely spend the rest of my life in prison, [I have] demonstrated a remarkable record of rehabilitation and eagerness to prepare for contributing to [my] community if . . . released." (ECF No. 245 at 22.) Since being incarcerated, Berrios has earned a GED, completed numerous learning programs, and earned the "Student of the Month" award. (*Id.*) He has only had one disciplinary infraction. (*Id.*) Importantly, Berrios asserts that "despite his struggles and the brutal prison culture surrounding him, [I have] not given up on [my]self." (*Id.* at 23.)

While the Court lauds Berrios on his efforts to rehabilitate himself, those efforts alone cannot demonstrate "extraordinary and compelling" reasons to warrant his release. *See McNair*, 481 F. Supp. 3d at 370 (finding that while the defendant's good behavior in prison and educational achievements, which are both part of the rehabilitation analysis, are commendable, "efforts to rehabilitate and educate himself, . . . alone, cannot demonstrate 'extraordinary and compelling reasons' to warrant [the defendant's] release").

Because there is no combination of Berrios' circumstances (*i.e.*, a nonretroactive change in the law or rehabilitation efforts) that would meet the "extraordinary and compelling" threshold, he is not entitled to a reduced sentence.

    **C.**    **18 U.S.C. § 3553(a) Factors**

Ultimately, even if these circumstances rise to an extraordinary and compelling level, which they do not, the Court finds that the § 3553(a) factors weigh strongly against Berrios' release. Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not

8

greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). A court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6); *see also United States v. Tapia*, Crim. No. 23-1811, 2023 WL 4575946, at *2 (3d Cir. July 18, 2023) ("A district court 'may reduce the term of imprisonment' and 'impose a term of probation or supervised release' if it finds that 'extraordinary and compelling reasons warrant such a reduction.' Before granting such relief, a district court must consider the sentencing factors in § 3553(a)." (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

Here, Berrios' criminal actions are undoubtedly serious in nature; he and his co-defendants committed a series of four violent armed bank robberies in New Jersey. Thus, to promote respect for the law, provide just punishment, and afford adequate deterrence, the Court finds that Berrios must serve the greater part of his sentence. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (affirming denial of compassionate release in bribery and fraud case where district court determined that the defendant's time served did not weigh in favor of release); *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) ("[T]he District Court did not abuse its discretion in assessing the seriousness of Doe's offense of conviction."); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("Given the seriousness of the offenses of conviction, Defendant's release, with less than fifty percent of his sentence served, would not reflect the seriousness of the

offenses, promote respect for the law, or provide just punishment for the offenses."); *United States v. Burney*, Crim. No. 18-00606, 2021 WL 62302, at *3 (D.N.J. Jan. 6, 2021) (finding that "releasing [the defendant] at this time would not reflect the seriousness of his offense, nor promote respect for the law. To be sure, Courts in this circuit have consistently considered the seriousness of multiple bank robberies in denying compassionate release in order to protect the public from further crimes of the defendant.").

The Court recognizes Berrios' arguments that he should be granted compassionate release because his sentence is "unusually long" and would have been significantly shorter if he were sentenced today under the current law. (*See* ECF No. 245 at 18-19.) While sympathetic to Berrios' position, courts in the Third Circuit routinely deny motions for compassionate release when a defendant has not yet served the greater portion of his or her sentence. *See, e.g.*, *United States v. China*, Crim. No. 15-0203-02, 2021 WL 2472325, at *5 (D.N.J. June 16, 2021) ("[The defendant] was sentenced to serve 262 months in prison and has an estimated release date of July 22, 2032. He has served less than 45% of his sentence. Releasing him now would be an extraordinary departure from the sentence Judge Linares imposed."); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) (finding that a 72-year-old inmate was not entitled to compassionate release because releasing him "with less than fifty percent of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses"); *United States v. Collazo*, Crim. No. 99-304, 2021 WL 632678, at *3 (E.D. Pa. Feb. 18, 2021) (finding that a defendant sentenced to 145 years for multiple bank robberies and attempted bank robberies was not entitled to compassionate release after serving just under 25 years, which would be less than 50% of the mandatory sentence if sentenced today as opposed to under the now rescinded regime). Here, Berrios has served approximately 17 years of his 85-year sentence.

Because Berrios has yet to serve the greater portion of his sentence, he is not entitled to compassionate release.

As to his second point, Berrios is correct that his sentence would presumably be shorter under the current law. *See Rutherford*, 120 F.4th at 377 (noting that a nonretroactive change in the law may be a legitimate consideration for courts in weighing the § 3553(a) factors); *see also* 18 U.S.C. § 3553(a)(1), (3), (4), (5), (6). If Berrios were sentenced in 2009 under the new statutory framework, that is only impose jail time for four counts of violating 18 U.S.C. § 924(c)(1)(A)(iii) (no longer subject to stacking), Berrios would presumably face a minimum of 40 years' imprisonment for the offenses. *See Hodge*, 948 F.3d at 161 n.2 ("After the First Step Act, when a first-time offender who discharged a firearm is convicted of multiple § 924(c) counts from the same indictment, each count carries only the standard 120-month minimum, run consecutively"). But even considering Berrios' hypothetical sentence under the current § 924(c) regime, he would still not have served the greater portion of such sentence. *See Collazo*, 2021 WL 632678, at *3. Therefore, the Court finds that the § 3553(a) factors do not favor reducing his sentence.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Compassionate Release (ECF No. 245) is **DENIED** without prejudice. An appropriate Order follows.

Dated: February 28, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**